J-S21010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAFAEL GARCIA, | |
| Appellant | No. 3569 EDA 2013 |

Appeal from the PCRA Order December 12, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0804021-2005, CP-51-CR-0804041-
2005, CP-51-CR-0804051-2005, CP-51-CR-0807401-2005

BEFORE:  BOWES, JENKINS, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 10, 2015**

Rafael Garcia appeals *pro se* from the December 12, 2013 order denying him PCRA relief at four different criminal action numbers.  We affirm.

Appellant, Carlos Garcia ("Carlos"), and Luis DeJesus operated a residential burglary ring in Northeast Philadelphia from 2001 to 2004.  Gene McFadden was recruited into the criminal enterprise in August 2004, and the co-conspirators started to burglarize commercial properties, including a federal post office.  As to the home burglaries:

> Typically, one of the conspirators would knock on the front door of a home; if no one answered, another would become a lookout while the others entered the home.  They broke windows, smashed doors and disabled alarm systems by disconnecting electric and phone lines.  [Appellant, Carlos, and DeJesus] stole jewelry, cash, cable boxes and other electronics.  They stole DVD players, guns, laptops and collectibles.  The

---

* Retired Senior Judge assigned to the Superior Court.

stolen goods were put into duffel bags, suitcases and pillow cases found inside the burglarized property. The contraband was then stashed at a house belonging to [Appellant's] sister, Jocelyn Garcia. This residence, located at 6119 Edmund Street in Philadelphia, served as *de facto* headquarters for the ring.

Trial Court Opinion, 9/22/14, at 1-2.

While the burglary ring was operating, Appellant had a room at Jocelyn's home on 6119 Edmund Street, where Carlos and DeJesus also lived intermittently. Jocelyn testified that Appellant locked his room. Appellant also had a separate residence in an apartment located on 2100 Tremont Street, Philadelphia.

Police cracked the perpetrators of the string of burglaries through the help of William Linehauser. As noted, until August 2004, Appellant, Carlos, and DeJesus targeted homes. That month, they asked McFadden to help them expand their burglary activities to commercial and governmental properties. McFadden was knowledgeable about how to successfully break into those establishments. McFadden planned and helped execute a burglary that transpired on August 22, 2004 at Wissinoming Post Office located at 5916 Torresdale Avenue. McFadden recruited Linehauser to help in the burglary. During that crime, Appellant, Carlos, DeJesus, McFadden and Linehauser stole an electric stamp meter, $350, and a postal money order worth $100. Police arrested Linehauser on August 30, 2004, after he cashed that money order. Linehauser admitted that he helped with the August 22, 2004 crime, and he agreed to wear a recording device.

In discussions occurring between September 28, 2004, and October 5, 2004, Appellant was taped planning a burglary at Tacony Beer Distributor located at 7829 Torresdale Avenue, with Carlos, DeJesus, McFadden, and Linehauser. After the other criminals became suspicious of Linehauser, he ceased wearing the recording device. On October 20, 2004, McFadden sold Linehauser some tools using pre-recorded money from the Philadelphia police. Those tools were then connected to a previously-reported residential burglary, and the owner of the tools, John Ferry, identified them as his stolen property.

On October 25, 2004, Appellant, Carlos, and McFadden burglarized the Tacony Beer Distributor but did not ask for Linehauser's assistance with this crime. They stole an ATM machine, cigarettes, between $5,000 and $6,000 in cash, and reams of scratch-off lottery tickets. Carlos' girlfriend, Tania Eckert, testified that during the night of October 25, 2004, she observed Carlos and McFadden carrying a large object and Appellant carrying a box of lottery tickets into 6119 Edmund Street. She later observed Appellant and his cohorts pry open an ATM with a screwdriver and crowbar.

After the burglary at Tacony Beer Distributor, police secured search warrants for 6119 Edmund Street, Appellant's Tremont Street apartment, and cars owned by Appellant and Eckert. The search warrants were premised upon information obtained from the recordings made by Linehauser. At 6119 Edmund Street, police discovered the ATM stolen on

October 25, 2004, together with lottery tickets, artwork, large amounts of jewelry and electronics, and drivers' licenses and credit cards belonging to burglary victims. At the Edmund Street location, police also found safes stolen during a September 14, 2004 burglary of Yordy's Deli, which was located at Torresdale Avenue. The safes contained $10,000 in cash when taken.

Appellant's Edmund Street bedroom "was packed from floor to ceiling with stolen goods; some of the items even had the original owner's name on them." *Id*. at 4. Ironically, one of the Philadelphia police detectives who participated in the execution of the search warrant found items stolen during a burglary of her home. Police also found stolen goods in Appellant's apartment at 2100 Tremont Street. Victims of the burglaries were able to identify items as stolen from their homes or businesses. The items seized from 6119 Edmund Street and Appellant's Tremont Street apartment implicated Appellant in the commission of thirty-seven burglaries.

On October 26, 2004, police stopped Eckert while she was driving her car. Carlos was her passenger, and police recovered in Eckert's vehicle a bag containing drivers' licenses and materials belonging to various burglary victims. Eckert and Carlos were arrested and agreed to cooperate with police. Carlos told police that he and Appellant had committed more than thirty burglaries since 2001, and he drove around pointing out some of their targets.

On October 28, 2004, Appellant was arrested outside 2100 Tremont Street. After waiving his **Miranda** rights, Appellant confessed to participating in the September 14, 2004 burglary of Yordy's Deli and the October 25, 2004 burglary of Tacony Beer Distributor. He also admitted to committing six reported residential burglaries in Northeast Philadelphia. After executing a written confession, Appellant rode with a police detective and identified properties that he and his accomplices had burglarized.

Four criminal actions were filed against Appellant charging him with a myriad of crimes. Appellant filed a pre-trial motion to suppress his confession and claimed that he told his arresting officers to call his lawyer, Ronald Abel. The police officers involved in Appellant's apprehension and questioning denied that Appellant invoked his right to counsel. The motion to suppress was denied.

The matter proceeded to a jury trial, where, on March 7, 2006, Appellant was convicted of thirty-seven counts each of burglary and receiving stolen property and one count each of corrupt organizations and conspiracy. On May 23, 2006, Appellant, who had a prior record score of three, was sentenced to thirty-five to seventy years imprisonment. We affirmed on direct appeal, **Commonwealth v. Garcia**, 976 A.2d 1202 (Pa.Super. 2009) (unpublished memorandum), and allowance of appeal was denied on October 27, 2009. **Commonwealth v. Garcia**, 982 A.2d 1227 (Pa. 2009).

Appellant filed a timely *pro se* PCRA petition on April 19, 2010, counsel was appointed, and counsel filed an amended PCRA petition as well as three supplemental PCRA petitions. After the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to deny the pending petitions without a hearing, counsel moved to withdraw. Appellant then responded to the Pa.R.Crim.P. 907 notice and raised allegations of PCRA counsel's ineffectiveness. Appellant's request for PCRA relief was denied on December 12, 2013, and PCRA counsel filed the present appeal. PCRA counsel then asked for a remand of this matter as Appellant had expressed a desire to represent himself. We remanded and retained jurisdiction, and the court conducted the requisite colloquy pursuant to **Commonwealth v Grazier**, 713 A.2d 81 (Pa. 1998). The PCRA court then allowed Appellant to proceed *pro se*.

Appellant's brief, which is seventy pages in length and does not contain the certification required by Pa.R.A.P. 2135,[1] contains the following issues:

---

[1] That rule states:

> (1) A principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words, except as stated in subparagraphs (a)(2)-(4). A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages or the reply brief is longer than 15 pages when prepared on a word processor or typewriter.

Pa.R.A.P. 2135(1).

I. Was trial counsel ineffective in failing to call Melinda Lugo and Ron Able, Esq. at the suppression hearing, and did the PCRA court erred [sic] in concluding that this issue was harmless error and did not warrant evidentiary hearing?

II. Was trial counsel ineffective in failing to file post-sentence motion challenging discretionary aspect of Appellant's sentence, and did PCRA court erred [sic] in concluding that this issue was waived & did not warrant evidentiary hearing?

III. Was appellate counsel ineffective in failing to raise preserved issue of the trial court's refusal to give accomplice charge to jury regarding Tania Eckert, and did PCRA court erred [sic] in concluding that the charge was not supported by record and harmless error?

IV. Was PCRA counsel ineffective in failing to raise appellant's originally filed *pro-se* claim of trial counsel's ineffectiveness re: failure to object and raise in post-verdict motion issues of multiple prosecutorial misconducts, and did the PCRA court erred [sic] in concluding that PCRA counsel had reasonable basis not to raise this issue because misconducts were harmless error?

V. Was PCRA counsel ineffective in failing to raise Appellant's originally filed pro-se claim of trial counsel's ineffectiveness re: failure to object and request factual element be included in inadequate instructions for conspiracy with multiple criminal objectives, and did the PCRA court erred [sic] in concluding that this issue had been previously litigated?

VI. Was PCRA counsel ineffective in failing to raise Appellant's originally filed *pro-se* claim of trial counsel's ineffectiveness re: failure to memorialize and declare the contents of Yamelyn Lugo's testimony at the suppression hearing, and did PCRA court erred [sic] in concluding that this issue was waived?

VII. Was PCRA counsel ineffective in failing to raise Appellant's originally filed claim of trial counsel's overall deficient performance in cumulation [sic], and did the PCRA court erred [sic] in concluding that this issue was meritless?

Appellant's brief at 4-5.

Initially, we outline the applicable principles regarding our review of the PCRA court's determinations herein:

> An appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Freeland*, 106 A.3d 768, 775 (Pa.Super. 2014) (citation omitted).

Appellant's averments pertain to allegations that he received ineffective assistance from prior counsel. Appellant bears a heavy burden in this respect since counsel "is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Id*. (citation omitted). There is a three-part test for proving counsel's ineffectiveness:

> To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Id*. (citation omitted). "Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." *Id*. (citation omitted; emphasis in original).

We have carefully reviewed the applicable facts and law and the allegations in the brief. We affirm the denial of PCRA relief on the basis of the comprehensive assessment of Appellant's claims outlined in the September 22, 2014 opinion authored by the Honorable Ramy I. Djerassi. We note that, to the extent that Judge Djerassi considered any issue waived or previously litigated, he also proceeded to address the issue on the merits.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015