J-S95035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
KARL K. MYERS, :
:
Appellant : No. 673 EDA 2016

Appeal from the PCRA Order February 8, 2016
in the Court of Common Pleas of Montgomery County,
Criminal Division, No(s): CP-46-CR-0004755-2011

BEFORE: STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED FEBRUARY 14, 2017**

Karl K. Myers ("Myers") appeals from the Order dismissing his

first Petition filed pursuant to the Post Conviction Relief Act.[1] We

affirm.

In its Opinion, the PCRA court set forth the relevant factual and

procedural history, which we adopt for the purpose of this appeal.

***See*** PCRA Court Opinion, 4/19/16, at 1-3.

On appeal, Myers raises the following issues for our review:

1. Did the [PCRA] court err in dismissing[,] without an
   evidentiary hearing, [Myers's] claim of ineffective
   assistance of trial counsel for making an argument to
   the jury that [Myers] was never at the barber[ ]shop
   when[,] in fact[,] he was on the video surveillance,
   which was in the custody of counsel prior to trial?

2. Did the [PCRA] court err in dismissing[,] after an
   evidentiary hearing, [Myers's] claim of ineffective
   assistance of trial counsel for even representing

_____
[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

> [Myers,] when his co-defendant was represented by counsel from the same [law] firm, specifically[, trial counsel's] boss?

Brief for Appellant at 1 (unnumbered).

In his first issue, Myers contends that, prior to trial, the prosecutor represented to Myers's trial counsel that there was no surveillance video of Myers at the barber shop, which was the location where the drugs were allegedly stored. *Id*. at 8. Myers asserts that, due to this assertion, his trial counsel developed a defense theory that Myers was simply a buyer/user of narcotics, with no connection to the barber shop. *Id*. Myers notes that the prosecutor ultimately introduced surveillance video showing Myers at the barber shop, and claims that his trial counsel was ineffective because, had he viewed the videos, he would have known that Myers was, in fact, in the barber shop surveillance videos. *Id*.[2]

The PCRA court addressed Myers's first issue, set forth the relevant law, and determined that the issue lacks merit. *See* PCRA Court Opinion, 4/19/16, at 12-17. We agree with the reasoning of the

---

[2] Myers also argues that the PCRA court erred by denying his request for an evidentiary hearing. Brief for Appellant at 12. However, Myers failed to raise this issue in his Concise Statement. *See* ***Commonwealth v. Lord****,* 719 A.2d 306, 309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived). Therefore, Myers failed to preserve this issue for our review.

PCRA court, which is supported by the record and free of legal error, and affirm on this basis as to Myers's first issue. **See id**.

In his second issue, Myers contends that there was an inherent conflict of interest in this case, as the payments for his trial counsel's representation were made to the law firm of Charles Peruto, Jr., Esquire ("Attorney Peruto"), who represented one of Myers's co-defendants.[3] Brief for Appellant at 13. Myers also asserts that "a third defendant in this case was represented by James Lloyd, Esquire, who was also a part of [Attorney] Peruto's law firm." **Id**. Myers claims that "[he] was offered 3 to 6 years (less than half of the mandatory minimum 7 years to 14 years which was in effect at the time) but ONLY if [he] testified against [Attorney] Peruto's client." **Id**. Myers notes that he received a prison sentence of 14 to 28 years, and argues that he was prejudiced by the ineffectiveness of his trial counsel.[4] **Id**.

The PCRA court addressed Myers's second issue, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Opinion, 4/19/16, at 4-10. The PCRA court further determined

---

[3] Myers's trial counsel was employed as an attorney at Attorney Peruto's law firm.

[4] Myers's second claim is woefully underdeveloped. **See** Pa.R.A.P. 2119(a) (stating that the parties' briefs must include a discussion of each question raised on appeal and a "citation of authorities as are deemed pertinent."). While we could find waiver on this basis, we decline to do so, as the PCRA court thoroughly addressed the issue in its Opinion.

that Myers had been thoroughly apprised of the potential conflict that trial counsel's representation presented, and Myers had expressly waived the conflict. **See id**. at 10. Finally, the PCRA court determined that no "actual prejudice" resulted from trial counsel's representation because the conflicting interests did not affect his performance. **See id**. at 11-12. We agree with the reasoning of the PCRA court, which is supported by the record and free of legal error, and affirm on this basis as to Myers's second issue. **See id**. at 4-12.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :      CP-46-CR-0004755-2011

                     :

           V.               :

KARL K. MYERS             :        **673 EDA 2016**

## **OPINION**

**CARPENTER  J.**                        **APRIL 19, 2016**

## FACTUAL AND PROCEDURAL HISTORY

Appellant, Karl K. Myers ("Myers"), appeals from an order dated February 8, 2016, dismissing his counseled petition seeking post-conviction relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541 – 9546.

By way of background, Myers was convicted on January 10, 2013, after a three day jury trial, of four counts each of possession with intent to deliver and possession of cocaine, three counts of criminal use of communications facility and one count each of corrupt organizations, dealing in proceeds of unlawful activities and criminal conspiracy.[1] At trial, Myers was represented by Richard DeSipio, Esquire.

Myers' convictions arose out of an investigation conducted by the Montgomery County Detective Bureau in concert with the Tredyffrin Township

---

[1]    Myers was tried with two other co-defendants, Patrick Wedderburn and Michael Dennis.



Scanned \ 2/28/2018

Police Department. Utilizing wiretaps and video surveillance the investigation uncovered a large and sophisticated cocaine distribution ring centrally operated out of barbershop located in Tredyffrin Township, Montgomery County, Pennsylvania. Myers was convicted for his vital role in the drug distribution organization. On November 7, 2013, Myers was sentenced to 14 to 28 years' imprisonment.

Myers timely appealed his conviction to the Pennsylvania Superior Court, and on December 23, 2014, the Superior Court affirmed his judgment of sentence. Myers' filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on April 28, 2015.

On September 21, 2015, Myers filed a counseled PCRA petition, along with a memorandum of law, which is at issue in this appeal. Therein Myers alleged that trial counsel was ineffective in failing to pursue plea negotiations due to a conflict of interest and that trial counsel was ineffective in pursuing a theory that Myers was never at the barbershop when in fact he was on video surveillance. The Commonwealth filed its answer to Myers' PCRA petition on December 3, 2015.

On February 5, 2016, a hearing was conducted only on the claim that trial counsel was ineffective due to a conflict of interest. At the hearing, PCRA counsel presented the testimony of trial counsel, Attorney DeSipio. The Commonwealth presented the testimony of the prosecuting Assistant District Attorney, Jason Whalley. After consideration of the testimony presented, arguments by both PCRA counsel and the Commonwealth and the law, this

2

Court denied relief and dismissed Myers' PCRA petition in its entirety by way of the order dated February 8, 2016. Myers filed a timely appeal.

## ISSUES

I.   Whether there was neither *per se* prejudice to Myers nor an "actual conflict" of interest, when Myers' co-defendant was represented by a different attorney in the same law firm as Myers' trial attorney.

II.  Whether no prejudice arose when Attorney DeSipio argued to the jury that Myers was never seen at the barbershop despite the Commonwealth's evidence to the contrary, when the other evidence of Myers' guilt was more than sufficient to convict him.

## DISCUSSION

"[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." Commonwealth v. Freeland, 106 A.3d 768, 775 (Pa.Super. 2014) (quoting Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014)) (citations and internal quotation marks omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on out appellate courts]." Commonwealth v. Medina, 92 A.3d 1210, 1214-15 (Pa.Super. 2014) (quoting Commonwealth v. Spotz, 18 A.3d 244, 259 (Pa. 2011). T

To be entitled to PCRA relief, an appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S. § 9543(a)(2), his claims have

3

not been previously litigated or waived, and "the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." Id. § 9543(a)(3), (a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue." Id. § 9544(a)(2). An issue is waived if appellant "could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state postconviction proceeding." Id. § 9544(b), see also, Commonwealth v. Robinson, 82 A.3d 998, 1005 (Pa. 2013).

Moreover, counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To establish trial counsel's ineffectiveness, a petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for the course of action or inaction chosen; and (3) counsel's action or inaction prejudiced the petitioner. See, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Commonwealth v. Pierce, 527 A.2d 973 (Pa. 987).

I.    There was neither *per se* prejudice to Myers nor an "actual conflict" of interest, when Myers' co-defendant was represented by a different attorney in the same law firm as Myers' trial attorney.

First on appeal, Myers contends that [t]he trial court erred in denying PCRA relief based upon [trial] counsel's ineffectiveness for even representing [him,] when his co-defendant was represented by counsel from the

4

same firm, specifically, trial counsel's boss". See, Concise Statement of Errors Complained of on Appeal 3/25/16 ¶1.

Myers was convicted as a member of the drug ring, purchasing large quantities of cocaine from co-defendant, Anthony Dennis. Anthony Dennis was represented by attorney Charles Peruto, Jr.[2] Attorney Peruto was from the same law firm as Attorney DeSipio.[3] Anthony Dennis entered an open guilty plea on January 4, 2013.[4] Anthony Dennis' guilty plea colloquy was docketed on the same day. On January 8, 2014, Anthony Dennis was sentenced to a term of 10 to 20 years' imprisonment.[5]

"An attorney owes his client a duty of loyalty, including a duty to avoid conflicts of interest. The attorney's duty of loyalty is the obligation of counsel to avoid actual conflicts of interest that would adversely affect his ability to perform on behalf of his client." Commonwealth v. Tedford, 598 Pa. 639, 960 A.2d 1, 54 (Pa.2008). An appellant cannot prevail on a preserved conflict of interest claim absent a showing of actual prejudice. Commonwealth v. Lopez, 51 A.3d 195, 200 (Pa. 2012) (citing Commonwealth v. Collins, 957 A.2d 237, 251 (Pa.2008). Prejudice will be presumed when the appellant shows that trial counsel was burdened by an actual—rather than mere potential—conflict

---

[2]  See, Common Pleas docket for Anthony Dennis at CP-46-CR-0004754-2011, Disposition Sheet.

[3]  Post-Conviction Relief Act Petition 2/5/16 p. 4.

[4]  See, Common Pleas docket for Anthony Dennis at CP-46-CR-0004754-2011, Disposition Sheet.

[5]  See, Common Pleas docket for Anthony Dennis at CP-46-CR-0004754-2011, Disposition Sheet.

5

of interest. To show an actual conflict of interest, the appellant must demonstrate that: (1) counsel actively represented conflicting interests; and (2) those conflicting interests adversely affected his lawyer's performance. Id.

### a. A conflict of interest does not give rise to per se ineffectiveness.

PCRA counsel's assertion on appeal[6] is that Attorney DeSipio was "ineffective for *even* representing [Myers]" when his co-defendant was represented by counsel from the same firm." See, Concise Statement of Errors Complained of on Appeal 3/25/16 ¶1 (emphasis added). This *per se* ineffectiveness argument lacks merit because an appellant must demonstrate "actual prejudice" in a conflict of interest claim. Therefore, this argument of per se ineffectiveness must fail.

### b. Attorney DeSipio did negotiate a non-trial disposition.

Additionally, in PCRA counsel's memorandum of law filed with Myers' PCRA petition,[7] PCRA counsel argued that due to the conflict of interest between the attorneys from the same law firm, Attorney DeSipio did not advise Myers that he should consider a non-trial disposition because it would have negatively impacted Anthony Dennis' case. See, PCRA petition 9/21/15, memorandum of law p. 9. This argument also lacks merit because the PCRA hearing testimony reveals that Attorney DeSipio did negotiate a non-trial disposition but it was rejected by Myers.

---

[6] This was also the sole argument asserted in Myers' PCRA petition. See, PCRA petition 9/21/ 15 ¶7.

[7] PCRA counsel incorporated her arguments presented in the memorandum attached to the PCRA petition into the arguments she made to the PCRA court. (Post-Conviction Relief Act Petition 2/5/16 p. 23).

6

The PCRA hearing established the following facts. Myers' first met with Attorney DeSipio in his office in June of 2011. (Post-Conviction Relief Act Petition 2/5/16 p. 6). At that time, Attorney DeSipio was aware that the firm was also going to represent at least one other co-defendant and Attorney DeSipio advised Myers of this. Id. at 7, 13. Attorney DeSipio explained to Myers that his interests might diverge from his other co-defendants, despite the fact that they did not at that time. Id. at 13. Myers was advised that circumstances could change and that there were risks associated with having co-defendants represented by the same firm. Id. Myers understood. Id. With this information, Attorney DeSipio asked Myers if he was willing to waive the potential conflict of interest, which Myers was willing to do and in fact he did. Id. at 14. Myers understood that he could terminate Attorney DeSipio at any time, but never expressed a desire to do that. Id.

At some point, Attorney DeSipio met with Myers regarding an offer of cooperation that was made by the Commonwealth, that if he cooperated against Anthony Dennis, there would be a significantly reduced sentence. Id. at 8 - 9. At the time of that discussion, Attorney DeSipio did not know that Anthony Dennis was going to be pleading guilty. Id. at 9. Attorney DeSipio found out the morning of trial that Anthony Dennis had pled guilty. Id. Attorney DeSipio testified that had he known that Anthony Dennis plead guilty, he would have strongly urged Myers to plead guilty. Id. at 10. He explained that he would have done so '[b]ecause he wouldn't have had to testify in live court against Anthony Dennis, which is something he did not want to do, and he

7

would not have had to do that, and yet still could have entered a plea. And the Commonwealth's offer remained the same." Id. However, Attorney DeSipio stated that even if Myers' co-defendants[8] were not being represented by the same firm, and more specifically, had Anthony Dennis not been represented by Attorney Peruto and not involved in the case at all, Attorney DeSipio would not have done anything differently in the discussion and the preparation with Myers. Id. at 11, 17 - 18. He also testified that his approach to the trial would have been the same even if no one from his law firm represented any of Myers' co-defendants. Id. at 15.

Attorney DeSipio did negotiate for a non-trial resolution of Myers' case. Id. The Commonwealth initially offered a relatively high offer, but with some negotiation back-and-forth the Commonwealth offered 3 to 6 years' imprisonment if Myers' testified against Anthony Dennis at trial. Id. at 15 – 16, 17. The negotiation continued up until the weekend or the day before trial. Id. at 16.

Attorney DeSipio did admit that had if Myers' co-defendants were not represented by attorneys from his firm he would have more of an effort to find out what the posture of the other co-defendant were, i.e., whether Anthony Dennis was going to plead guilty and/or whether the co-defendants would have testified. Id. at 16. Attorney DeSipio explained that they put up a strict wall in the office. Id. at 16 – 17. Attorney Peruto and Attorney DeSipio did not discuss

---

[8] Co-defendant Michael Dennis was also represented by an attorney, Attorney James Lloyd, who was in the same firm as Attorney DeSipio and Attorney Peruto, Jr. (Post-Conviction Relief Act Petition 2/5/16 pp. 4, 11). Both Attorney DeSipio and Attorney Lloyd were employed by Attorney Peruto. Id. at 4.

8

the case at all. Id. at 17. Whereas, if it were counsel not in his firm Attorney DeSipio would have called counsel and tried to "feel them out" and find out what happened. Id. This would have been the only difference had Myers' co-defendants not been represented by the same firm, the preparation would have remained the same. Id. at 17 – 18.

Attorney DeSipio acknowledged that the Commonwealth offer of 3 to 6 years in exchange for Myers' testimony against Anthony Dennis was the absolute last offer. Id. at 18. There was never any offer from the Commonwealth if Myers did not testify. Id. Attorney DeSipio stated that Myers' could have entered an open plea. Id. However, Attorney DeSipio did acknowledge at the time mandatory minimums were still in effect at the time. Id. at 19.

ADA Whalley testified that the final offer from the Commonwealth was 3 to 6 years. Id. at 21. He did not remember whether it was contingent on Myers' testifying against Anthony Dennis. Id. at 21. ADA Whalley did remember that they were negotiating up until the morning of trial and that Myers' rejected all the plea offers. Id.

At the conclusion of the testimony both PCRA counsel and the Commonwealth offered argument. Id at 23 – 27. The matter was then taken under advisement by this Court. Id. at 27.

As this testimony evidences, Attorney DeSipio did in fact negotiate a deal of 3 to 6 years' incarceration, which was ultimately rejected. This negotiation was an ongoing back-and-forth with the Commonwealth and lasted

9

up until the time of trial. Therefore, Attorney DeSipio cannot be ineffective on this basis.

### c. Attorney DeSipio did explain the consequences of dual representation and Myers' waived the conflict.

Further, in the memorandum of law in support of the petition PCRA counsel argued that, "[Myers] respectfully maintains that the trial court was ineffective for not properly explaining the consequences of being represented by an attorney from the same firm as the co-defendant's attorney. Because both attorneys work together, counsel never advised [Myers] that he should consider exploring a non-trial disposition, which would have negatively impacted the co-defendant's case." See, memorandum of law in support of the Myers' PCRA 9/21/15, p. 9. However, in this case, the credible testimony of Attorney DeSipio established that Myers waived the conflict of interest that he now contends was prejudicial. When Myers first met with Attorney DeSipio, Myers was advised that the same law firm was representing one other co-defendant. Attorney DeSipio explained to Myers that his interests might diverge from his other co-defendants, despite the fact that they did not at that time. Myers was also advised and understood that circumstances could change and that there were risks associated with having co-defendants represented by the same firm. Despite these warnings, Myers waived the potential conflict of interest.

10

**d. Prejudice cannot be measured by the sentenced that co-defendant Anthony DeSipio received more than a year after Myers' trial concluded.**

Moreover, in the memorandum of law PCRA counsel argued that Myers was prejudiced because co-defendant Anthony Dennis received half the amount of time that Myers' received at sentencing. This is also not a viable claim because Anthony Dennis entered an open guilty plea and even if Attorney DeSipio did know that on the day of Myers' trial he could not have known what sentence Anthony Dennis would receive when he was sentenced on January 8, 2014, almost a year after Myers' trial.

**e. No "actual prejudice" arose from the dual representation.**

Finally, no "actual prejudice" actually arose by this dual representation. Conflicting interests between Myers and co-defendant Anthony Dennis arose when Anthony Dennis pleaded guilty. However, this did not cause "actual prejudice" to Myers because these conflicting interests did not adversely affect Attorney DeSipio's performance. Attorney DeSipio stated that the fact that co-defendant Anthony Dennis was represented by Attorney Peruto, an attorney in the same firm, did not affect his discussions with Myers or his preparation for Myers' trial. Attorney DeSipio and Attorney Peruto avoided talking about their clients to each other. They had erected a wall between their representation of their clients. Additionally, Attorney DeSipio did seek a non-trial disposition, negotiating a potential plea offer, up until the start of his trial. A final Commonwealth offer of 3 to 6 years Myers' rejected. This offer was

11

available to Myers' until the start of his trial. He rejected that offer, choosing to roll the dice and go to trial.

The only difference that Attorney DeSipio stated at the PCRA hearing he would have done if Attorney Peruto was not representing Myers' co-defendant was that he would have tried to find out the posture of the co-defendant's case. Attorney DeSipio testified had he known that co-defendant Anthony Dennis pleaded guilty; he would have strongly urged Myers' to take the plea negotiation. Attorney DeSipio explained at the PCRA hearing that he believed that even if Myers did not testify since Anthony Dennis plead guilty, the offer of the Commonwealth remained the same. (Post-Conviction Relief Act Petition 2/5/16 p. 10. However, this Court found this portion of Attorney DeSipio's testimony speculative as to whether the offer would have remained the same even if Myers did not have to testify. Accordingly, this Court determined that Attorney DeSipio's representation of Myers while Attorney Peruto represented Anthony Dennis did not adversely affect his performance and that an "actual conflict" did not exist. Therefore, for all of the reasons stated this claim of ineffectiveness lacks merits.

II.    No prejudice arose when Attorney DeSipio argued to the jury that Myers was never seen at the barbershop despite the Commonwealth's evidence to the contrary, when the other evidence of Myers' guilt was more than sufficient to convict him.

Second, Myers asserts that the PCRA court erred in denying PCRA relief based upon trial counsel's ineffectiveness for making an argument to the jury that he was never at the barbershop, the hub of the drug ring, when in fact

12

he was on the video surveillance, which was in the custody of trial counsel prior to trial.

At trial, the Commonwealth was attempting to elicit testimony from an investigating officer about a search warrant which was issued for a 2007 Acura, registered to Myers. (Trial by Jury, V. 3, 1/9/13 pp. 5 - 6). The detective stated that the search warrant was never executed because the vehicle could not be located. Id. at 6. At that juncture, the Commonwealth showed a videotape of Myers at the barbershop exiting the Acura which was the subject of the search warrant. Id. at 6 - 7. Defense counsel made an objection and requested a sidebar. Id. at 7.

Once out of the presence of the jury, defense counsel made a motion for a mistrial, stating that any prejudice to his client could not be overcome based on his opening statement to the jury and his cross-examinations of the various witnesses. Id. at 8. Defense counsel explained that he had received an email from the Assistant District Attorney on the Sunday prior to trial which counsel represented that the email stated in part, "…Also, we will be using some fixed surveillance video of the barbershop. Karl is not in any of them." Id. Defense counsel argued that despite the Assistant District Attorney's representation to the contrary, the jury has now been shown that the car that Appellant drove in, an Acura, and which was registered to Appellant, was at the barbershop and that Appellant was seen by the jury in a video at the barbershop. Id. at 9.

13

The Commonwealth agreed that the email was sent, but disagreed with defense counsel's reading of that email. The Commonwealth asserted that the email doesn't say Appellant was never seen at the barbershop; but rather, it states that the Commonwealth will be using some fixed surveillance and that Appellant is not in any of them. Id. The Commonwealth argued that the email was not sent in bad faith, and explained that that the time the email was sent, the Commonwealth was using videos where Appellant was not seen at the barbershop. However, subsequent to that email, the Commonwealth stated that it found other fixed surveillance in which Appellant is depicted at the barbershop. Id. at 9 - 10. The Commonwealth also argued that because this Court had, two days prior, stated that it would be allowed to use any and all video or audio evidence and that defense counsel had the hard drives of all of that evidence for over a year and a half prior to trial, defense counsel was on notice that Appellant could be seen in video surveillance at the barbershop. Id.

This Court agreed that what the Commonwealth told defense counsel in the email was that Appellant was not in any of the video surveillance of the barbershop and that defense counsel had every right to rely on that assertion in telling the jury that Appellant is not going to be seen in a video. Id. at 12 - 13. This Court never told the Commonwealth that it could use video evidence that it told a lawyer it wasn't going to use. Id. at 14. At that point, this Court denied the motion for a mistrial without prejudice. Id. at 14. This Court stated that at a break it wanted defense counsel to discuss with Appellant whether Appellant really does want a mistrial. Id. The objection was sustained,

14

the evidence was stricken from the record and the jury was given a cautionary instruction. Id. at 14 – 15. The cautionary instruction was as follows:

> All right then, members of the jury, I'll remind you that in the oath you took what you swore to do, among other things, is follow my instructions on the law. Everyone in this courtroom, every defendant, every lawyer has the absolute right to rely on the fact that you will follow my instructions to the letter.
>
> There was an objection to the last piece of evidence. That objection is sustained. That evidence is not admissible. It's stricken from the record. You must obliterate it from your mind. It can have no bearing on this trial. Strike it from your notes. Never refer to it. Never think about it. It was improper and impermissible. It's not part of this case. You must completely disregard it. You must follow the instruction that it may have no bearing whatsoever in you deliberations in any way in this case. All right?
>
> Please proceed.

Id. at 15 – 16.

On direct appeal, appellate counsel claimed that this trial court erred in failing to grant a mistrial after the Commonwealth presented evidence to the jury it claimed it did not have, referring to the video footage that the Commonwealth played of Myers at the barbershop. See, Commonwealth v. Myers, 3243 EDA 2013 (Pa.Super.) (December 23, 2014) (memorandum opinion). The Superior Court wrote to supplement the reasoning of this trial court and in pertinent part explained as follows:

> We write briefly to supplement the trial court's reasoning regarding Myers' first issue. Prior to trial, the Commonwealth informed Myers' counsel the Commonwealth would be presenting certain

15

surveillance videos of the barbershop, but that Myers would not be in any of the portions shown. This resulted in a stipulation agreeing to the admission of the video. Myers' counsel highlighted the fact his client was never seen at the barbershop in his opening statement. Nonetheless, the Commonwealth showed a brief portion of a video showing Myers exiting his car outside the barbershop. The trial court appropriately concluded the Commonwealth had violated the terms of the agreement. However, the trial court denied the motion for mistrial. Instead, the trial court gave a very strong limiting instruction to the jurors highlighting the improper nature of the evidence and instructing the jury that on no account could they consider the evidence. In its Pa.R.A.P. 1925(a) opinion, the trial court denied Myers relief based upon the strength of the instruction and the lack of any indication that the jury ignored the instruction.

While we agree with the trial court's analysis, we also note that there was sufficient evidence beyond the video surveillance to support the convictions, and therefore, even if the trial court erred in refusing to grant a mistrial the error was, at most harmless error. **Myers was identified multiple times on wiretap recordings negotiating for the purchase of substantial amounts of cocaine. He was also under surveillance as people from the barbershop travelled to South Philadelphia to meet Myers to deliver the cocaine he had ordered over the phone. Accordingly, whether Myers was ever at the barbershop was of minimal importance.**

Id. at pp. 2 – 3 (emphasis added).

As noted in the Superior Court's analysis, the video of Myers at the barbershop was of "minimal importance," and that there was sufficient evidence beyond the video surveillance to support the convictions and its introduction by the Commonwealth was "at most harmless error."

16

Despite this analysis by the Superior Court on direct appeal, Attorney DeSipio testified at the PCRA hearing[9] that had he known that the video of Myers would have been played to the jury, he would have "beat [Myers] over the head to plea. He would have entered a plea." (Petition for Post-Conviction Relief Act 2/5/16 pp. 11 - 12.) However as the Superior Court noted on direct appeal, the barbershop footage and "whether Myers was ever at the barbershop was of minimal importance[]" and there was plenty of other evidence sufficient to convict Myers. Therefore, it cannot be said that Myers suffered prejudice by Attorney DeSipio's failing to review the barbershop footage himself and inadvertently stipulating to its introduction into evidence. Accordingly, Attorney DeSipio cannot be deemed ineffective.

## CONCLUSION

Based on the foregoing analysis, the order dated February 8, 2016, denying Myers' request for PCRA relief should be affirmed.

BY THE COURT:

WILLIAM R. CARPENTER J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

Copies sent on April 19, 2016
By Interoffice Mail to:
Court Administration
By First Class Mail to:
Gina A. Capuano, Esquire

---

[9]     Although the PCRA hearing was limited to the conflict of interest issue, PCRA counsel asked Attorney DeSipio about this issue and the Commonwealth did not object. (Post-Conviction Relief Act petition 2/5/16 pp. 11 - 12).

17